**Haregewoin G. AREDA, Appellant**

v.

**S–W TRANSPORTATION, INC. d/b/a Park Avenue Limousine and Samson Woube, Appellees.**

**No. 05–10–01119–CV.**

Court of Appeals of Texas, Dallas.

April 19, 2012.

Brandon L. Starling, Shackelforf, Melton & Mckinley, Dallas, TX, for Appellant

Jordan Holt, Holt & Hirsch, David R. Weiner, Weiner Law Firm, Dallas, TX, for Appellees.

Before Justices O'NEIL, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice FRANCIS.

S–W Transportation, Inc. d/b/a Park Avenue Limousine and Samson Woube sued Haregewoin G. Areda for conversion, fraud, and breach of fiduciary duty. Following a one-day bench trial, the trial court found in appellees' favor on all claims and awarded actual damages to both appellees and punitive damages to Woube. We reverse the trial court's judgment and render judgment that appellees take nothing.

Woube was the primary witness at trial. He testified he owns S–W Transportation, a Texas corporation operating a limousine transportation service under the name Park Avenue Limousine. Appellant was an employee and contract laborer of S–W Transportation from late 2003 to early 2007. She was initially hired as a dispatcher and, at some point, was promoted to office manager. Woube said appellant had "control of all the accounting and all the office jobs." She received customers' checks, made deposits, and prepared the

checks to pay SWT's bills, but Woube said she did not have check-signing authority. She converted to contract labor in late 2004.

McKennon Habte was a close friend and employee of Woube's. In 2004, Woube gave Habte one-half of the stock in the corporation and named Habte a director and vice president. The two men also had real estate and other investments together with a separate bank account.

In late 2003, Woube began a new business in Dubai and, by 2006, was spending months at a time overseas. Woube testified he gave Habte power of attorney to transact business for the company as well as for Woube personally. Habte was responsible for operating the office, including the receivables, the billing, and customer relations, and Woube, when in town, was largely responsible for the maintenance of the vehicles.

While Woube was out of town, Habte, with the assistance of appellant, ran the office and oversaw his and Woube's real estate investments. Woube said he spoke frequently with Habte and appellant about "how things were running" with the company and was never told of any problems. Then, in April 2007, Woube received an emergency telephone call from his wife about the possible foreclosure on their home for failure to pay property taxes. Woube returned and found that taxing authorities were attempting to seize company vehicles and property and the company was being evicted from its building. Woube confronted Habte, who initially denied any wrongdoing. Woube began investigating the company's finances as well as his account with Habte and discovered a significant amount of money was missing. Habte then admitted that he had begun an affair with appellant and had spent most of

the money on her. Habte resigned as an officer of the company and returned the stock Woube had given him. Woube confronted appellant, who promised to repay the money. When she did not, Woube sued her.

At trial, Woube presented checks, drawn on the company account, made payable to appellant and signed by Habte between December 2003 and June 2006. Additionally, evidence showed a wire transfer and credit/debit charges on the company card that benefited appellant and that a company vehicle was used as a trade-in for a vehicle titled in appellant's name. As for Woube personally, there was evidence that Habte paid appellant's mortgage and utility bills from his joint account with Woube and had a tenant make repairs to appellant's vehicles in exchange for four months' rent. Woube also testified that appellant endorsed a check, made payable to him by a tenant, and then deposited the check into her account.

Appellant, who was pro se at trial, did not testify and did not call any witnesses. At the conclusion of the evidence, the trial court found in appellees' favor. The trial court awarded S–W Transportation $55,486.12 in damages and awarded Woube $6,031.29 in actual damages and $200,000 in punitive damages. Later, the trial court made findings of fact and conclusions of law, all of which supported each of appellees' claims for fraud, conversion, and breach of fiduciary duty.

Among her issues on appeal, appellant raised complaints that there was no evidence of breach of fiduciary duty, conversion, or fraud. On appeal, appellees abandoned their claims for conversion and fraud.[1] Accordingly, we limit our review to the breach of fiduciary duty claim.

1. At the start of oral argument, appellees noted they did not respond to arguments on

The trial court found that between 2003 and 2007, a fiduciary relationship existed between appellant and S–W Transportation and between appellant and Woube; appellant breached her fiduciary duty; and the breach was the proximate cause of appellees' damages. In his second issue, appellant argues no evidence establishes appellant was a fiduciary of either S–W Transportation or Woube. We agree.

█ When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue on which she did not have the burden of proof, she must demonstrate that no evidence supports the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). We review the evidence presented at trial in the light most favorable to the fact-finder's findings, crediting evidence to that party if a reasonable fact-finder could and disregarding evidence unless a reasonable fact-finder could not. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex.2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). Anything more than a "scintilla of evidence" is legally sufficient to support the finding. *Cont'l Coffee Prods., Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994).

█ A fiduciary duty is an extraordinary duty which will not be lightly created. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.-Dallas 1989, no writ). Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). Appellees do not argue that there was a formal fiduciary relationship between the parties; rather, they argue an informal, confidential relationship existed between appellant and Woube and appellant and S–W Transportation.

█ In some circumstances, informal relationships may also give rise to a fiduciary duty. *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992). These informal relationships, termed "confidential relationships," may arise "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one." *Id.* A confidential relationship exists in those cases in which "influence has been acquired and abused, in which confidence has been reposed and betrayed." *Id.* (quoting *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980)).

█ A person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the other party's judgment and advice and there exists a long association in a business relationship as well as a personal friendship. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 304 (Tex.App.-Dallas 2009, no pet.). "The existence of the fiduciary relationship is to be determined by the actualities of the relationship between the persons involved." *Id.* (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1963)). Although we recognize the existence of a confidential relationship is ordinarily a question of fact,

fraud or conversion in their brief and further informed the Court they were not making any argument to support the judgment based upon fraud or conversion. We construe appellees' position to be a voluntary abandonment of those theories of liability. *See Wells Fargo Bank Tex., N.A. v. Barton*, 100 S.W.3d 455, 458 (Tex.App.-San Antonio 2003, no pet.); *In re J.G.W.*, 54 S.W.3d 826, 832 (Tex. App.-Texarkana 2001, no pet.).

when the issue is one of no evidence, it becomes a question of law. *Crim Truck,* 823 S.W.2d at 594.

With respect to Woube, no evidence was presented to support the existence of a long and special relationship between Woube and appellant, that Woube and appellant had a moral, social, domestic, or personal relationship, or that Woube was ever guided by appellant's judgment and advice. Instead, the evidence established only that appellant worked for Woube's company for three years. Other evidence showed that Habte oversaw his and Woube's real estate investment account, and that appellant assisted Habte. We conclude the evidence presented was legally insufficient to establish the sort of "confidential" relationship that would give rise to a fiduciary duty between appellant and Woube.

As for S–W Transportation, the only evidence in the record shows that appellant started as an employee and was switched to contract labor in late 2004. She received customers' checks, made deposits, and prepared the checks to pay S–W Transportation's bills. She did not, however, have check-signing authority.

Appellees rely on *Paschal v. Great Western Drilling, Ltd.,* 215 S.W.3d 437, 451 (Tex.App.-Eastland 2006, pet. denied), to support a finding of fiduciary duty. In *Paschal,* the employer sued the wife of a deceased employee to recover money stolen by the employee. *Paschal,* 215 S.W.3d at 442. The employee, Alan Paschal, was a senior revenue accountant who had worked for Great Western for twenty years.

The evidence showed Paschal was in charge of disbursing revenue received by the company to various working interests and royalty owners who owned interests in leases operated by the company. Paschal set up the lists of payees and payments in the company computer system, printed the checks to be issued, and forwarded them for mailing by another person. No other officer examined the checks, and the checks contained preprinted signatures (and were not signed by an actual person). In other words, Paschal essentially was in control of the entire process. During his employment, he stole $1.5 million from the company by diverting revenue payments received by the company to a fictitious royalty owner that he created in the company computer system and then depositing the checks into his own account. *Paschal,* 215 S.W.3d at 442, 451. The court concluded that "[t]he responsibilities that Great Western assigned to [Paschal] to distribute millions of dollars of revenue to the appropriate recipient is some evidence that he occupied a position of peculiar confidence toward Great Western and owed Great Western a fiduciary duty." *Id.* at 451.

The facts in *Paschal* vary greatly from those in this case as outlined above. Unlike Paschal, who was charged with the responsibility of distributing millions of dollars and essentially had control of the process, appellant was essentially a bookkeeper with no check-signing authority, which is no evidence that she occupied a position of peculiar confidence toward S–W Transportation.

We conclude the evidence is legally insufficient to support a finding that appellant was a fiduciary of either Woube or S–W Transportation. Therefore, we sustain the second issue as it relates to this complaint. Our disposition of this issue makes it unnecessary to address the remaining issues.

We reverse the trial court's judgment and render a take-nothing judgment on appellees' claims.