**REVERSE and RENDER; and Opinion Filed December 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01184-CV

**PLAINSCAPITAL BANK, Appellant**
**V.**
**SALLY JOANN REAVES, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-04118**

# MEMORANDUM OPINION

Before Justices Evans, Boatright, and O'Neill[1]
Opinion by Justice Boatright

Following a bench trial, the district court rendered judgment against PlainsCapital Bank

for breaching a fiduciary duty owed to its customer, Sally Reaves, and for fraudulently failing to

disclose to Reaves material information that the Bank had a duty to disclose. PlainsCapital appeals

the judgment, claiming, among other grounds, that no evidence supports the court's findings. We

reverse and render.

## BACKGROUND

Reaves and her business partner, Faith Glover, are the founders of Sagebrush Solutions,

L.L.C, a company whose business was to identify overpaid healthcare claims and to collect the

overpayments for a contingent fee. The events that allegedly gave rise to a fiduciary relationship

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment

date back to late 2000, when Reaves and Glover contacted Martin Talley, at that time a banker at Texas Bank, to discuss a possible Small Business Administration loan to Sagebrush. In the ensuing five years, Sagebrush obtained two loans from Texas Bank with Talley's assistance.

In April 2006, Compass Bank acquired Texas Bank, and Talley left Compass to join PlainsCapital (the Bank). Approximately four months later, Reaves's husband died from cancer, and she notified Talley of her husband's passing. Less than a week later, and before Reaves had yet returned to work, Talley arranged a meeting to discuss a new SBA loan that he was arranging for Sagebrush. At this meeting, Talley stated that the company needed additional collateral to secure the loan. Reaves and Glover responded that they had no other assets to offer, at which point Talley asked Reaves if she would be receiving any life insurance proceeds. Raves responded yes, and Talley asked if she would pledge these proceeds as additional collateral. Reaves agreed to do so, and she deposited $88,521 of the proceeds into her personal investment account to purchase mutual fund securities.

In late November 2006, approximately three months after Talley's request, Plains Capital made two loans to Sagebrush, the first of which was an SBA line of credit up to $1 million, and the second of which was a conventional loan for $525,000. Each of these loans had three guarantors—Reaves, Glover, and an entity owned by them, RG Consolidated Ventures, LP. Reaves pledged her investment account containing the life insurance proceeds to secure the $1 million SBA loan, and Glover also pledged her own personal investment accounts as collateral for the loan.

In the spring of 2012, PlainsCapital made two additional loans to Sagebrush, the first in the amount of $171,126.68, and the second in the amount of $250,000. As with the 2006 loans, Reaves, Glover, and RG Consolidated Ventures guaranteed the 2012 loans. Moreover, Reaves and Glover again pledged their investment accounts as collateral to secure the loans.

PlainsCapital contends that Sagebrush began to struggle in 2012, and additional financing became difficult to obtain. In November of that year, the Bank, Sagebrush, and the guarantors executed a forbearance agreement as to the 2006 SBA line of credit and the 2012 loans. Nearly three years later, in July 2015, the $250,000 loan matured, and PlainsCapital demanded payment. This debt remained unsatisfied as of September 2015. The Bank at that time accelerated the remaining loans and demanded that they be paid in full. Sagebrush did not make payment. The Bank then sold the securities in the accounts pledged by Reaves and Glover and applied the proceeds from these sales to reduce Sagebrush's outstanding debt. The offset of Reaves's account totaled $194,514.97.

Reaves sued Plains Capital on April 8, 2016, alleging claims for breach of fiduciary duty, breach of the duty of good faith and fair dealing, and fraud. Her claims are based on Talley's requests that she pledge as collateral the proceeds from her husband's life insurance policy. She complains that Talley did not tell her that these proceeds were exempt from creditors unless pledged, TEX. INS. CODE ANN. §§ 1108.051, .053(2), and she asserts that she would not have pledged them had she known of this exemption. She also alleges that Talley did not suggest that she seek independent advice before signing her pledge. The Bank responds that the foregoing statutory exemption did not take effect until 2003, three years prior to the 2006 loans at issue here. It also contends that Talley was not yet aware of the exemption when the loans were made and that Reaves was instructed in the loan documents to seek legal advice.

PlainsCapital filed a no-evidence motion for summary judgment, which the court granted as to Reaves's good faith and fair dealing claim. The case proceeded to trial on the remaining claims. Following the trial, the court rendered judgment for Reaves in the amount of $277,450.34—consistent with Reaves's calculations regarding the value of her pledged securities at the time of trial had they not been sold—plus court costs and post-judgment interest. The court

made findings of fact and conclusions of law in support of its judgment, and PlainsCapital filed this appeal.

## ANALYSIS

PlainsCapital raises four issues, the first two of which urge that Reaves's breach of fiduciary duty and fraud claims are "untenable and cannot be sustained." As the plaintiff in the court below, Reaves had the burden to establish the existence of a fiduciary duty, *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 728 (Tex. App.—Dallas 2015, no pet.), and to prove the elements of her fraud claim, *Citizens Standard Life Ins. Co. v. Gilley*, 521 S.W.2d 354, 356 (Tex. App.—Dallas 1975, no writ). The Bank urges that no evidence supports the court's findings that (i) the Bank had a fiduciary relationship with Reaves, (ii) it breached its fiduciary duty, or (iii) it committed fraud by nondisclosure. In evaluating these contentions, we must consider evidence favorable to the court's findings if a reasonable factfinder could and must disregard evidence contrary to the finding unless a reasonable factfinder could not. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016). Evidence is legally insufficient to support a finding if: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.* Through the lens of these standards, we will look at whether the evidence is legally sufficient to support the court's findings.

**Fiduciary Duty Claim**

A breach of fiduciary duty claim includes, among other elements, a fiduciary relationship between the plaintiff and the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). Although such a relationship may be formal or informal, *id.*, it is undisputed that this case does not involve a formal fiduciary relationship. "An informal fiduciary duty may

–4–

arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). However, "a fiduciary duty is an extraordinary duty." *Areda v. S-W Transp., Inc.*, 365 S.W.3d 838, 841 (Tex. App.—Dallas 2012, no pet.). "[T]o give full force to contracts, we do not create such a relationship lightly." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (per curiam) (citation and internal quotation marks omitted).

The relationship between a borrower and its lender is usually neither a fiduciary nor a special relationship. *Patrusky v. Bloomberg*, No. 05-14-00175-CV, 2015 WL 3896097, at *7 (Tex. App.—Dallas June 24, 2015, no pet.) (mem. op.). A fiduciary relationship in this context, when found, "has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Id.* In its first issue, the Bank urges that there is no such evidence in this case. The existence of a confidential relationship is usually a question of fact, though it becomes a question of law when the issue is one of no evidence. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002).

### *Scope of review*

It is undisputed, and the court found, that the relationship in question began in late 2000, when Reaves and Glover sought out Talley to discuss a possible SBA loan to Sagebrush. PlainsCapital argues that this relationship cannot qualify as a fiduciary one because Reaves and Talley had no relationship prior to their business dealings. Among other authorities, the Bank relies upon this Court's recognition that an informal fiduciary relationship in a business transaction depends on the existence of a special relationship of trust and confidence prior to, and separate from, "the parties' agreement," *Jones*, 196 S.W.3d at 449 (citing *Schlumberger Tech. Corp. v.*

–5–

*Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)), and upon our affirmance of a summary judgment for the defendant with respect to a breach of fiduciary duty claim in which the plaintiff provided no evidence of a preexisting relationship beyond the parties' "business relationship," *Patrusky*, 2015 WL 3896097, at *8. These opinions do not require that the "special relationship" predate *any* business relationship between the parties. As the Texas Supreme Court has held, such a relationship must instead exist prior to, and apart from, "'*the agreement made the basis of the suit*.'" *Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006) (emphasis added) (quoting *Schlumberger*, 959 S.W.2d at 177). However, the court has also recognized that any prior agreements, to the extent they were arms-length transactions entered into for the parties' mutual benefit, cannot establish a basis for a fiduciary relationship. *Meyer*, 167 S.W.3d at 331. With this guidance in mind, we will examine whether the record contains evidence of a fiduciary relationship that began prior to, and apart from, the execution of the loans at issue, which occurred in November 2006 and in March and April 2012.

PlainsCapital also contends that, assuming a fiduciary relationship existed during Talley's employment at Texas Bank, this relationship did not transfer to PlainsCapital when Talley began working there. PlainsCapital urges that to hold otherwise would "place an impossible burden on lenders and employers" by requiring them to "research and determine if any informal fiduciary relationship existed prior to employing any individual." We need not decide this issue. As set forth below, we conclude that the record contains no evidence of an informal fiduciary relationship, even if we consider the portion of the relationship that dates back to Talley's employment at Texas Bank.

### Confidential relationship

Reaves notes that "[a] party is justified in placing confidence in the belief that another party will act in his or her best interest . . . where he or she is accustomed to being guided by the judgment

or advice of the other party, and there exists a long association in a business relationship as well as personal friendship." *In re Estate of Abernethy*, 390 S.W.3d 431, 438 (Tex. App.—El Paso 2012, no pet.). Based upon her social and business relationship with Talley, Reaves urges that she was accustomed to being guided by his business advice.

At trial, Reaves testified that she and Glover had lunch with Talley a few times each year, and Talley and his wife attended Reaves's wedding in 2003 and gave her a gift. They also discussed that Talley attended school with Reaves's sister from elementary school through high school. In addition, Reaves confided in Talley in 2005 that her husband had fallen ill, and she included Talley on the e-mail a year later that notified her friends her husband had died. Talley sent Reaves a condolence plant following this news. She likewise sent Talley a plant when his mother died in 2010. None of these facts, in and of themselves, are sufficient to establish a fiduciary relationship. "[S]olely because the relationship between the parties has been lengthy and cordial does not necessarily mean a confidential relationship exists." *Id*. By way of comparison, the Texas Supreme Court could not justify such a relationship notwithstanding that, for four years, the parities in question were friends and frequent dining partners. *Meyer,* 167 S.W.3d at 331.

The record also reveals several instances in which Talley gave Reaves and Glover business advice regarding Sagebrush. For example, while employed at Texas Bank, Talley recommended that Sagebrush change from the cash method to the accrual method of accounting, thereby rendering its financial statements more accurate and "more bankable." Talley also suggested that Sagebrush capitalize its software development costs as an asset, that it register on the SBA website using "NAIC and SIC codes," and that Reaves sell some of her personal securities holdings to infuse additional capital into the business.

After moving to PlainsCapital, Talley continued to advise Reaves regarding the available options for financing Sagebrush's business. He recommended that Sagebrush layer its loans by

obtaining an SBA revolving line of credit for short-term expenses and a term note for long-term expenses. According to Reaves, Talley himself completed a portion of the lengthy application for the revolving line of credit, though she acknowledged on cross examination that Talley did not prepare Sagebrush's financial documents. Talley also reviewed, and suggested revisions to, the complex "borrowing base" documents that Sagebrush's line of credit required it to prepare and submit twice monthly. Moreover, Talley recommended a "lock box"—a repository that the revolving line of credit required for holding and tracking the overpayments that Sagebrush obtained for its clients—and he assisted in implementing the lock box.

Reaves also notes that Talley asked her, within a week after her husband's death, if she would pledge the proceeds from her husband's life insurance policy as collateral for the Sagebrush SBA loan. She was "pretty out of it" at the time, and she agreed to pledge these proceeds notwithstanding that, unbeknownst to her, they would have been exempt from creditors if not pledged. TEX. INS. CODE ANN. §§ 1108.051, .053(2). In 2012, Talley again recommended that Reaves pledge the insurance proceeds to secure the Sagebrush loans originated that year, and she did so. Reaves urges that the foregoing evidence establishes an informal fiduciary relationship, based on case authority that such a relationship (i) arises in cases "in which influence has been acquired and abused, in which confidence has been reposed and betrayed," *Crim Truck & Tractor*, 823 S.W.2d at 594 (citation and internal quotation marks omitted), and (ii) is characterized by the dominance of one party or the weakness or dependency by the other, *Associated Indem. Corp. v. CAT Contracting, Inc.*, 918 S.W.2d 580, 596 (Tex. App.—Corpus Christi 1996), *aff'd in part, rev'd in part on other grounds*, 964 S.W.2d 276 (Tex. 1998). In addition, she argues for the existence of a fiduciary relationship based on PlainsCapital's purported exercise of excessive control over, or influence in, Sagebrush's business activities.

Reaves cites several case involving lenders and borrowers, but none of the circumstances in those cases justified the imposition of a fiduciary relationship. On the other hand, for purposes of comparison, PlainsCapital cites *State National Bank of El Paso v. Farah Manufacturing Co.,* in which our sister court held that the evidence supported a finding that lenders interfered with the borrower corporation's business by forcing out the corporation's CEO, appointing their own CEO, and packing the board with their own hand-picked nominees. 678 S.W.2d 661, 688–90 (Tex. App.—El Paso 1984, writ dism'd by agr.). The Bank urges that this case does not involve such facts and is instead analogous to decisions holding that lenders did not owe a fiduciary duty. For example, a lender's supervision of the borrower's improvements to real property that secured the loan did not constitute the exercise of dominion or control. *Falcon Int'l Bank v. Cantu*, No. 3-13-00577-CV, 2015 WL 1743396, at *12 (Tex. App.—Corpus Christi–Edinburg Apr. 15, 2015, no pet.) (mem. op.). Rather, the lender's conduct "was merely consistent with protecting [its] interest" in the collateral. *Id.* In another case, the fact that a bank's customers had made substantial deposits in the bank, were shareholders of the bank, and had often sought its advice on various matters, did not establish extensive control or influence by the bank over the customers' business activities. *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 410 (Tex. App.—El Paso 2004, no pet.).

In sum, the record in this case reveals a long-standing and cordial business relationship in which Reaves considered Talley "a trusted advisor and friend." However, the "mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of a fiduciary relationship." *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.). Upon considering the evidence favorable to the court's findings, we conclude that such evidence is legally insufficient to support the court's determination that Talley and Reaves shared a fiduciary relationship.

*Contractual disclaimer*

PlainsCapital also relies upon the November 2012 forbearance agreement signed by Reaves, in which she expressly acknowledged that the relationship in question "is solely that of debtor and creditor." The agreement also states that PlainsCapital "has no fiduciary or other special relationship" with Sagebrush or Reaves, nor shall any term or condition "be construed so as to deem the relationship . . . to be other than that of debtor and creditor." In addition, the agreement notes that it was "negotiated at arms-length and in good faith" and that, before signing it, Reaves "had the opportunity to be advised of [her] legal rights by an attorney of [her] choice and selection."

In an analogous circumstance, the Supreme Court held that the lower court erred in relying on the parties' work on prior projects as evidence of a fiduciary relationship between them, given that "the agreements" governing such projects "expressly disavowed the creation of any fiduciary duties or other special relationships." *Meyer*, 167 S.W.3d at 331. Similarly, the disclaimer signed by Reaves supports our conclusion that the record contains no evidence of a fiduciary relationship. Absent such a relationship, we need not decide whether the evidence supports the court's finding that PlainsCapital breached a fiduciary duty. We sustain the Bank's first issue.

**Fraud Claim**

Our holding regarding PlainsCapital's first issue bears on our analysis of its second, which urges that the record contains no evidence the Bank committed fraud by nondisclosure. This claim is premised on the allegation that the Bank, through Talley, fraudulently concealed that Reaves's life insurance proceeds were exempt unless they were pledged. Absent a fiduciary relationship between Talley and Reaves, and given that the statutory provisions exempting such proceeds were publicly available, TEX. INS. CODE ANN. §§ 1108.051, .053(2), the record contains no basis to impose a duty to disclose here, which is a necessary element of a fraud by nondisclosure claim.

–10–

*Myre v. Meletio*, 307 S.W.3d 839, 843–44 (Tex. App.—Dallas 2010, pet. denied). Moreover, a party cannot be guilty of fraudulently or intentionally concealing facts of which he is not aware. *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 391 (Tex. App.—Tyler 2009, pet. denied). Talley testified that he knew that homesteads, 401k accounts, and retirement assets were exempt from creditors, but he was not aware until after the lawsuit was filed that life insurance proceeds were also exempt. The record contains no evidence to the contrary. While Talley at the time of trial possessed thirty-seven years of experience in the banking industry, the foregoing statutory provisions were not enacted until 2003, three years prior to Reaves's first pledge of her insurance proceeds. Accordingly, there is not more than a scintilla of evidence of proof of Talley's knowledge of the facts that he purportedly concealed from Reaves. In sum, we conclude that the record lacks legally sufficient evidence to support Reaves's claim of fraud by nondisclosure. *Crosstex*, 505 S.W.3d at 613. For each of the foregoing reasons, we sustain PlainsCapital's second issue.

## CONCLUSION

Our resolution of the Bank's first two issues is dispositive of this appeal. We need not consider its remaining issues, which complain of purported evidentiary errors and also contend that Reaves's claims were barred by the statute of limitations. We reverse the court's judgment and render judgment that Reaves taking nothing with respect to her claims against the Bank.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

171184F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PLAINSCAPITAL BANK, Appellant

No. 05-17-01184-CV     V.

SALLY JOANN REAVES, Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-04118.
Opinion delivered by Justice Boatright.
Justices Evans and O'Neill participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellee take nothing with respect to her claims against appellant.

      It is **ORDERED** that appellant PLAINSCAPITAL BANK recover its costs of this appeal from appellee SALLY JOANN REAVES.

Judgment entered this 17th day of December, 2018.