**Motions for En Banc Reconsideration Denied as Moot; Opinion of December 28, 2018 Withdrawn; Affirmed as Modified in Part, Reversed and Rendered in Part, Reversed and Remanded in Part, and Substitute Opinion Filed April 2, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00962-CV

---

### JANG WON CHO, Appellant

### V.

### KUN SIK KIM AND VERONICA YOUNG LEE, LEGAL HEIR TO PATRICK HIY CHANG LEE, Appellees

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-06274**

---

## S U B S T I T U T E   O P I N I O N

We deny as moot the motion for en banc reconsideration filed by Appellant, Jang Won Cho, and the motion for en banc reconsideration filed by Appellees, Kun Sik Kim and Veronica Young Lee, legal heir to Patrick Hiy Chang Lee. We withdraw our opinion dated December 28, 2018, and issue the following substitute

opinion.

Jang Won Cho appeals from a judgment against him and in favor of Appellees Kun Sik Kim and Veronica Young Lee in connection with claims for breach of fiduciary duty and fraud arising from an unsuccessful real estate project.

## BACKGROUND

This appeal stems from a project to acquire land along Homestead Road in Houston; build a retail strip shopping center called "Pandel Plaza;" and lease storefronts in the center to commercial tenants.

The center was built but failed to generate enough rental income to cover property taxes and other expenses. Two of the three investors in the project sued the third investor alleging that the shopping center's failure is attributable to tortious conduct by the third investor.

All of the project's investors pursued business and professional activities in Houston after coming to the city from South Korea. One of the investors was Mr. Patrick Hiy Chang Lee, a CPA. His wife is Veronica Young Lee, who is referred to as "Veronica" Lee in this litigation. She took over her husband's participation and interest in the project after his health began to decline in 2005; he died in 2013.[1] The other investors are Kun Sik Kim and Jang Won Cho, a businessman with experience in the construction industry.

The investors created two entities to accomplish this project. One entity is "Pandel, Inc.," which was incorporated in 2000. Kim, Lee, and Cho each own one third of the corporation. Cho signed the corporation's bylaws as a director and "secretary of Pandel, Inc." with an effective date of November 20, 2000.

---

[1] Unless otherwise specified, all references to "Lee" in this opinion refer to Veronica Lee.

The other entity is a limited partnership called "Pandel Holdings, L.P." The limited partnership's general partner is Pandel, Inc., which has a one percent interest in the limited partnership; Kim, Lee, and Cho are limited partners, each with a 33 percent interest in the limited partnership. The parties planned to transfer ownership of Pandel Plaza from the corporation to the limited partnership, but the transfer did not occur.

The three investors contributed capital to buy the land in 2001, followed by construction of a 9,000-square-foot building. Pandel, Inc. borrowed $500,000 from American First National Bank in 2004 as a construction loan. The investors also made subsequent individual capital contributions.

The project generated revenue from rent paid by tenants. Additional revenue resulted from selling an easement covering a portion of the land to the City of Houston; however, the city later constructed a ramp that impeded access to the shopping center and hid it from view.

The shopping center's occupancy and rent revenue dwindled over time, and relations between the three investors became strained to the point where Kim and Lee sued Cho, the limited partnership, and the corporation in 2009. In July 2012, all parties filed a Rule 11 agreement under which they agreed to file a joint motion to dismiss the 2009 suit without prejudice. The dismissal order was signed on August 30, 2012, but acrimony among the investors continued unabated.

The parties offer sharply different explanations for the shopping center's demise.

According to appellant Cho, appellees Kim and Lee refused to contribute any funds to the business after 2008; refused to participate in managing the property or addressing its problems; and thereby put the burden entirely on Cho to manage the

3

property and make further contributions from his personal funds to keep the business afloat as he struggled to reverse the shopping center's sagging fortunes. Acting as Pandel, Inc.'s president, Cho took out a short term loan in October 2012 for $161,071.88 from Apex Star Properties, Inc. at an 18 percent annual interest rate. Cho contends Pandel, Inc. needed to borrow this sum to keep the property out of foreclosure because Kim and Lee refused to contribute additional capital.

In contrast, Kim and Lee contend that Cho "abused their trust and confidence by secretly gaining personal benefits at their expense and driving the business off of a financial cliff." According to Kim and Lee, Cho did so by

- refusing "to contribute his fair share of capital, opting instead to freeride on the resources others supplied;"

- awarding Pandel Plaza's construction contract to a company he owned;

- promising "that building construction costs would amount to no more than $423,000," which equates to $47 per square foot multiplied by the shopping center's 9,000 square foot capacity, and then charging $67 per square foot for a total construction cost of $629,630;

- constructing the shopping center badly, which made finding and keeping tenants more difficult;

- entering a subsequent construction contract without their knowledge;

- paying excessive monthly management fees to a company owned by Cho;

- refusing to "disclose critical financial information about what the business was doing and why;"

- failing to explain why Kim and Lee needed to make capital

4

contributions;

- failing to notify Kim and Lee of the easement sale to the City of Houston, or to obtain their approval; and

- using the shopping center's accounts to pay for his own attorney's fees incurred in the ongoing legal disputes with Kim and Lee.

Kim and Lee contend that Cho's mismanagement and self-dealing caused the shopping center to lose tenants, fall into disrepair, and become "unmarketable at present."

Kim and Lee sued Cho again in February 2013; among other things, they asserted claims for breach of fiduciary duty, fraud, breach of contract, negligent misrepresentation, and conversion. Kim and Lee removed Cho as an officer and director of Pandel, Inc. in 2015, after which the shopping center "became vacant, fell to ruin, and has been subjected to fines from the City of Houston."

The case proceeded to trial in 2016. The trial court submitted the claims against Cho to the jury, which answered a series of charge questions in favor of Kim and Lee.

- The jury answered "No" in response to Question 1, which asked: "Did Jang Won Cho comply with his fiduciary duty to Kun Sik Kim and Veronica Young Lee?" Question 1 identified five requirements for the jury to consider in deciding whether Cho complied with his fiduciary duty.

- The jury answered "Yes" in response to Question 4, which asked: "Did Jang Won Cho fail to comply with the agreement to create a partnership owned equally by Jang Won Cho, Kun Sik Kim and Veronica Young Lee for the purpose of holding the real estate located at 8213

5

Homestead Road, Houston, Texas 77028?"

- The jury answered "Yes" in response to Question 7, which asked: "Did Jang Won Cho commit fraud against Kun Sik Kim and Veronica Young Lee?" This question was accompanied by instructions defining fraud in two ways — once as the making of an affirmative "material misrepresentation," and then as a "failure to disclose a material fact."

- The jury answered "Yes" to Question 10, which asked: "Did Jang Won Cho make a negligent misrepresentation on which Kun Sik Kim and Veronica Young Lee justifiably relied?"

- The jury answered "Yes" to Question 13, which asked: "Did Jang Won Cho convert property belonging to Kun Sik Kim and Veronica Young Lee?"

- The jury answered "Yes" to Question 16, which asked: "Do you find by clear and convincing evidence that the harm to Kun Sik Kim and Veronica Young Lee resulted from malice, fraud, or gross negligence?"

- The jury answered "Yes" to Question 18, which asked: "Do you find by clear and convincing evidence that Jang Won Cho knowingly or intentionally misapplied fiduciary property?"

The jury awarded damages in answers to a series of identical questions predicated on the "Yes" answers to Questions 1, 4, 7, 10, and 13. Based on its liability findings with respect to breach of fiduciary duty, breach of contract, fraud, negligent misrepresentation, and conversion, the jury awarded identical dollar amounts for each of the following elements:

- "Construction Costs" totaling $129,630;

- "Misapplication of initial investment" totaling $352,600;

- "Management Fees" totaling $120,110;

- "Interest paid to Apex Star Properties, Inc." totaling $86,978;

- "Attorney's fees for Mr. Cho's defense" totaling $44,195; and

- "Undistributed profits" totaling $394,770.

The jury also awarded exemplary damages totaling $6,769,698 predicated on the unanimous "Yes" answer to Question 16.

The trial court signed a final judgment against Cho, and in favor of Kim and Lee, awarding $1,128,283 as actual damages for the "fraud and fiduciary duty claims;" $6,769,698 as exemplary damages; and $354,713.63 as prejudgment interest. Cho timely appealed.

## ANALYSIS

Cho challenges the trial court's final judgment in eight issues and asserts as follows.

1. Kim and Lee cannot "recover for breach of fiduciary duty where no fiduciary duty was owed as a matter of law . . . ."

2. The evidence is legally and factually insufficient to support the jury's finding that Cho committed fraud, and that Kim and Lee suffered damages caused by fraud.

3. Kim and Lee must "elect between recovering out-of-pocket reliance damages and benefit-of-the-bargain expectancy damages for fraud . . . ."

4. The evidence is legally and factually insufficient to support the jury's

7

finding that Kim's and Lee's conduct caused damages in the amounts found by the jury.

5. A new trial should be granted based upon cumulative error because "the trial court repeatedly commented on the weight of the evidence and [Cho's] . . . credibility, and . . . the record contains numerous translation errors that undermined the reliability of the record . . . ."

6. Exemplary damages are not available in the absence of legally and factually sufficient evidence of fraud, malice, or gross negligence.

7. The exemplary damages awarded in the judgment are unconstitutionally excessive.

8. The trial court erred in computing prejudgment interest.

We address these issues in turn, but not in the order in which they are raised.

## I.      Liability and Damages

Based on the jury's answers and the trial court's final judgment, Kim and Lee have two legal routes to a recovery against Cho in connection with their failed shopping center project.  One route is based on breach of fiduciary duty; the other is based on fraud.  *See Hatfield v. Solomon*, 316 S.W.3d 50, 59 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[I]f a party receives favorable findings on two or more theories of recovery that are consistent with each other and result in the same damages, then the trial court may render judgment awarding a single recovery of these damages and this judgment may be based on all of these theories.").

Kim and Lee contend that both the breach of fiduciary duty and fraud routes to recovery are legally viable on this record and support the final judgment.  They do not argue that other alternative bases exist for the judgment, and they do not rely on the additional findings regarding breach of contract, negligent misrepresentation,

or conversion to support the judgment. Like the parties, we too focus our liability analysis on breach of fiduciary duty and fraud.

## A. Breach of Fiduciary Duty

Cho's first issue challenges the submission of Question 1 to the jury asking whether he complied with his fiduciary duties. Cho contends that he owed no fiduciary duties to Kim and Lee as a matter of law because (1) "the parties entered into formalized business relationships that do not give rise to such duties;" and (2) informal fiduciary duties cannot arise from "assertions of trust and confidence that did not precede the formal, written duties."

Cho's appellate arguments challenge only the existence of a fiduciary duty; Cho does not attack the sufficiency of the evidence underlying the jury's "No" answer to Question 1 asking whether he complied with the elevated standards of conduct imposed on a fiduciary. According to Cho, no informal fiduciary relationship existed here because "the parties did not have a previous fiduciary relationship . . . before the transaction made the basis of this suit." Cho asserts as follows: "These were experienced businessmen, but they had no fiduciary relationship prior to and apart from the agreement made the basis of this suit."

Kim and Lee contend that both a formal and an informal fiduciary relationship were established on this record. Kim and Lee argue that a formal fiduciary relationship existed among Kim, Lee, and Cho "because they were partners." Kim and Lee argue further that an informal fiduciary relationship existed among Kim, Lee, and Cho based on a relationship of trust and confidence. They also argue that Cho's counsel conceded the existence of a relationship of trust and confidence in an exchange with the trial court during the hearing on motions for directed verdict at the close of the evidence.

9

## 1. Overview of fiduciary relationships

"We have recognized the difficulty of formulating a definition of the term 'fiduciary' that is comprehensive enough to cover all cases." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 593 n.3 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 225-26 (Tex. 2002)); *see also Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (Tex. 1942).

In certain formal relationships, such as those involving partners, trustees, or an attorney-client relationship, a fiduciary duty arises as a matter of law. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 199 (Tex. 2002); *see also Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

Apart from formal relationships in which fiduciary duties arise as a matter of law, fiduciary duties also can arise based on an informal fiduciary relationship predicated on "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex. 1998); *see also Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176-77 (Tex. 1997). "But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp.,* 959 S.W.2d at 176-77. "In order to give full force to contracts, we do not create such a relationship lightly." *Id*. at 177. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp.,* 964 S.W.2d at 288; *see also Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

If the existence of a formal fiduciary relationship is disputed, then a question should be submitted in the jury charge inquiring whether the formal fiduciary relationship existed at the time of the transaction at issue, or with respect to the transaction at issue, or both. *See Nat'l Plan Adm'rs., Inc. v Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700-04 (Tex. 2007); *Johnson,* 73 S.W.3d at 200-03.

The existence of an informal relationship of trust and confidence usually is a question of fact. *Crim Truck & Tractor Co.*, 823 S.W.2d at 594. "Although we recognize that the existence of a confidential relationship is ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law." *Id.* (citing *Thigpen*, 363 S.W.2d at 253).

The jury charge did not submit a threshold question asking whether a formal or informal fiduciary relationship existed among Kim, Lee, and Cho. Instead, Question 1 assumed the existence of an informal fiduciary relationship and instructed the jury that "[b]ecause a relationship of trust and confidence existed between them, Jang Won Cho owed Kun Sik Kim and Veronica Young Lee a fiduciary duty."

Cho did not object during the charge conference to this instruction accompanying Question 1, or to the absence of a threshold question asking the jury to determine whether a formal or informal fiduciary duty relationship existed. He did not tender a requested jury charge question asking whether a fiduciary relationship existed. Therefore, a threshold finding necessary for recovery is deemed to have been made under Texas Rule of Civil Procedure 279 in conformity with the jury's verdict provided that factually sufficient evidence supports the deemed finding. *See, e.g., Republic Petroleum LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 432 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (threshold finding of plaintiff's capacity to recover damages on behalf of working

11

interest owners was deemed to have been made consistent with jury's verdict when capacity issue was omitted from charge without objection or tender); Tex. R. Civ. P. 279.

A trial court may disregard a jury finding under Texas Rule of Civil Procedure 301 when it is immaterial or is not supported by legally sufficient evidence. *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994); *Graves v. Tomlinson,* 329 S.W.3d 128, 147 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Cho filed a motion for judgment notwithstanding the verdict under Rule 301 and asserted, among other things, that the answer to Question 1 should be disregarded because (1) the jury's "No" answer is not supported by legally sufficient evidence; and (2) "as a matter of law, there was no fiduciary relationship between the parties." Cho's Rule 301 motion was overruled by implication. *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 831 (Tex. 1999); Tex. R. App. P. 33.1(a)(2)(A).

In reviewing a legal sufficiency challenge to the evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could do so, and disregarding contrary evidence unless a reasonable fact finder could not do so. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). We may not sustain a legal sufficiency challenge unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id*. at 810 (quoting Robert W. Calvert, "*No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L. Rev. 361, 362-63 (1960)). The fact finder is the sole judge of the witnesses' credibility and the weight to give their testimony. *Id.* at 819.

We now apply these standards in relation to the existence of a formal or an

informal fiduciary relationship.

## 2. Formal fiduciary relationship

Cho contends that no formal fiduciary relationship exists with Kim and Lee because "the parties entered into two separate agreements that formally established their relationship as arm's length, contracting parties, and not as fiduciaries. Therefore, no formal fiduciary relationship arose, as a matter of law."

For their part, Kim and Lee contend that a formal fiduciary relationship existed because "the relationship between Mr. Cho and the Plaintiffs constituted a partnership . . . entailing a community of interest in the Pandel Plaza venture, the sharing of both profits and losses, and mutual rights of control and management of the enterprise." According to Kim and Lee, trial testimony "repeatedly established the sharing of profits, losses, and control that all parties agreed to at the outset" and Cho "freely admitted to having established a 'partnership' . . . ." Kim and Lee further contend that the creation of a corporation and a limited partnership by agreement does not foreclose a fiduciary relationship because those agreements and entities were "aspects" of the already-existing partnership giving rise to fiduciary duties.

We note that Question 1 on breach of fiduciary duty was not based on the existence of a formal fiduciary relationship; instead, it was based on an informal fiduciary relationship "[b]ecause a relationship of trust and confidence existed" among Cho, Kim, and Lee.

In any event, the contentions raised by Kim and Lee do not survive scrutiny in light of the parties' agreements. Passing references to parties as "partners" in the course of their transactions do not establish a fiduciary relationship when other requisites are missing. *See, e.g., Schlumberger Tech. Corp.*, 959 S.W.2d at 177. Here, we look to the parties' agreements in assessing whether a formal fiduciary

duty existed. *See Peckham v. Johnson*, 98 S.W.2d 408, 416 (Tex. Civ. App.—Fort Worth 1936), *aff'd*, 120 S.W.2d 786 (Tex. 1938).

The parties created a corporation, Pandel, Inc., with each of the investors participating as a one-third shareholder. This circumstance does not give rise to a formal fiduciary duty because "a co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder." *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). As Pandel, Inc.'s sole director, Cho owed fiduciary duties to Pandel, Inc. — but not to individual shareholders. *Id*. ("A director's fiduciary duty runs only to the corporation, not to individual shareholders or even to a majority of the shareholders."). Kim and Lee do not purport to assert a derivative claim on behalf of Pandel, Inc.

When a holding company called Pandel Holdings, L.P. subsequently was created, it was established as a limited partnership among general partner Pandel, Inc. and limited partners Kim, Lee, and Cho. The agreement establishing the limited partnership provides that the general partner owes fiduciary duties. *See Crenshaw v. Swenson*, 611 S.W.2d 886, 890 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) ("In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of a the trust."). The general partner was Pandel, Inc. — not Cho. Under the circumstances of this case, the existence of the limited partnership provides no basis for a formal fiduciary relationship as between Cho, Kim, and Lee.

In light of this record, we conclude that there is no basis for a formal fiduciary duty as between Kim, Lee, and Cho that would support the submission of Question 1. We now turn to the parties' contentions regarding whether an informal fiduciary duty existed.

14

### 3.     Informal fiduciary relationship

Cho contends that, as a matter of law, he owed no fiduciary duties to Kim and Lee pursuant to an informal fiduciary relationship "because there was no prior fiduciary relationship that existed before the parties entered into this written, formalized real-estate enterprise."  According to Cho, "The parties did not have a previous fiduciary relationship — or, more correctly, Kim and the Lees never relied on Cho for business advice — before the transaction made the basis of this suit."

Kim and Lee urge this court to "reject Mr. Cho's denial of fiduciary duties because Mr. Cho conceded that fiduciary duties existed and conceded that the Plaintiffs were entitled to a directed verdict on this issue."  They base this contention on an exchange that occurred during a hearing on motions for directed verdict after both sides rested.

Kim's and Lee's counsel moved for a directed verdict in their favor on "the issue of whether or not there's an existence of a fiduciary relationship between Mr. Cho and the plaintiffs."  Their counsel argued that this relationship existed as a matter of law.  Accordingly, Kim's and Lee's counsel asserted there was no need for a threshold jury question asking whether such a relationship existed; instead, their counsel contended that the jury should be instructed that the fiduciary relationship existed and asked directly whether Cho complied with his fiduciary duty arising from an informal fiduciary relationship.  The trial court then engaged in this exchange with Cho's counsel.

> THE COURT:  Are you going to argue against that?  As I look at you with . . . .
>
>       *                *                *
>
> [CHO'S COUNSEL]:  Is that his only motion?
>
> [COUNSEL FOR KIM AND LEE]:  That would be the only motion,

yes.

[CHO'S COUNSEL]:  It existed, Your Honor.

THE COURT:  Yeah, exactly.  So, see, you're a nice, honest guy.

Based on this exchange, the trial court announced its intention to remove the threshold jury question from the charge asking whether a relationship of trust and confidence existed.  Question 1 as submitted to the jury placed the burden of proof on Cho and asked, "Did Jang Won Cho comply with his fiduciary duty to Kun Sik Kim and Veronica Young Lee?"  The jury was instructed as follows in Question 1: "Because a relationship of trust and confidence existed between them, Jang Won Cho owed Kun Sik Kim and Veronica Young Lee a fiduciary duty."  The jury answered "No" to Question 1.

According to Kim's and Lee's briefing, "By yielding to a directed verdict 'on the issue of whether or not there's an existence of a fiduciary relationship between Mr. Cho and the plaintiffs,' . . . Mr. Cho bound himself to the position that *evidence* proved all of a fiduciary duty's legal prerequisite" (original emphasis).  They conclude as follows:  "Since Mr. Cho's trial counsel had already agreed to the directed verdict during charge formation, the district court was not obliged to grant any post-judgment relief."

Kim's and Lee's briefing does not identify the exact legal basis — whether it be waiver, judicial admission, invited error, or another doctrine — for a contention that "Mr. Cho bound himself" irrevocably to an admission that the evidence establishes a relationship of trust and confidence existing before and apart from the parties' shopping center transaction.

Cho did not waive his immateriality challenge predicated on a no evidence complaint by failing to object at trial to Question 1 on this basis.  This is so because a no evidence objection also can be raised after trial in a timely filed Rule 301 motion

16

to disregard — as Cho did by moving to disregard the jury's answer to Question 1 — even without a charge objection. *See, e.g.*, *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992); *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). A Rule 301 motion is a proper vehicle for preserving a contention that a particular jury answer should be disregarded as immaterial because the question impermissibly called on the jury to answer a question of law. *See White Oak Operating Co. v. BLR Constr. Cos.*, 362 S.W.3d 725, 729 n.1 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Ballesteros v. Jones*, 985 S.W.2d 485, 499 (Tex. App.—San Antonio 1998, pet. denied); *see also Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 704 ("NPA's argument on appeal is not that the jury question was defective, but that because NPA did not owe National Health a general fiduciary duty at all, the question should not have been submitted. . . . Because NPA did not owe National Health a general fiduciary duty, the question should not have been submitted, the question is immaterial, and it cannot support a judgment for National Health. . . . NPA was not required to object to the immaterial question.").

Additionally, even without an objection during the charge conference, we still must consider Cho's Rule 301 challenge to the legal sufficiency of the evidence supporting a Rule 279 deemed finding that an informal fiduciary relationship existed among Kim, Lee, and Cho. *See Republic Petroleum LLC*, 474 S.W.3d at 432; *see also Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 704; Tex. R. Civ. P. 279 ("A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant.").

Insofar as Kim and Lee suggest Cho judicially admitted the existence of a relationship of trust and confidence absent necessary evidence of circumstances

giving rise to such a relationship, this suggestion is not valid. A judicial admission must be "clear and unequivocal." *See, e.g., Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 466 (Tex. 1969). The statement "[i]t existed" in reference to a relationship of trust and confidence is not clear and unequivocal because this statement does not address **when** "[i]t existed" or whether "[i]t existed" before and apart from the transaction giving rise to this litigation.

Additionally, a judicial admission contention is inapt because the existence of an informal relationship of trust and confidence becomes a question of law if there is no evidence to support its presence. *Crim Truck & Tractor Co.*, 823 S.W.2d at 594 (citing *Thigpen*, 363 S.W.2d at 253). "A party may not judicially admit a question of law." *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.); *see also Jackson v. Tex. S. Univ.-Thurgood Marshall Sch. of Law*, 231 S.W.3d 437, 440 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (same).

Insofar as Kim and Lee suggest Cho invited error by taking inconsistent positions before and after verdict regarding a jury submission addressing the existence of an informal fiduciary duty, that suggestion also falls short. Cho did not ask the trial court to submit the wrong liability theory. *Compare Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010) ("Smith believed both [premises liability and negligent activity] theories were applicable to his case, but Del Lago objected to the submission of a negligent-activity theory. The trial court agreed and only submitted a premises-liability question. Del Lago cannot now obtain a reversal on grounds that the jury should have decided the facts under a theory of liability that Del Lago itself persuaded the trial court not to submit to the jury.") *with United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 481 (Tex. 2017) ("A defendant has no obligation to complain about a plaintiff's omission of an independent theory of

18

recovery; rather, the burden to secure proper findings to support that theory of recovery is on the plaintiff . . . . Were we to adopt Levine's argument that a defendant bears the burden to object to a jury charge not supported by the . . . evidence adduced at trial, we would effectively force the defendant to forfeit a winning hand.").

The general rule is that the plaintiff bears the burden to obtain affirmative answers to jury questions as to the necessary elements of the plaintiff's cause of action. *United Scaffolding, Inc.*, 537 S.W.3d at 481; *see also Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991). This burden does not disappear when a defendant asks the trial court to disregard the jury's affirmative answer to a necessary threshold question on the plaintiff's claim based on no evidence grounds — regardless of whether the defendant requested submission of that threshold question. *See Musallam v. Ali,* No. 17-0762, 2018 WL 5304678, at *2-3 (Tex. Oct. 26, 2018).

We conclude that Cho is not foreclosed from challenging Question 1 as immaterial under Rule 301 based on his contention that no evidence supports the existence of a relationship of trust and confidence established before and apart from the transaction made the basis of suit. We now turn to a discussion of the evidence addressing a relationship of trust and confidence that predated the parties' business transaction.

For his part, Cho contends that no informal fiduciary relationship existed "prior to and apart from the agreement made the basis of this suit." Kim and Lee emphasize that, "[a]s members of Houston's close-knit Korean community, Mr. Cho, Mr. Kim, and Mr. Lee were not just acquaintances." Kim and Lee contend that "the informal fiduciary relationships at issue here *did* precede the group's decision to go into business together" (original emphasis). They point to evidence that such

a relationship existed "at the beginning." According to Kim and Lee, "The parties entered into the business relationship *because of* their preexisting special relationship of 'trust'" (original emphasis).

The testimony highlighted by Kim and Lee does not address the presence of a relationship of trust and confidence existing before and apart from the transaction made the basis of this suit. *See Schlumberger Tech. Corp.,* 959 S.W.2d at 177; *Associated Indem. Corp.,* 964 S.W.2d at 288.

Appellees point to testimony from Lee, who described the importance of "hierarchy in the Korean society." She testified that persons who do not comply with "hierarchal roles" will be "left out alone from the community or society . . . ."

According to Lee, the enforcement of a hierarchical system in Korean society "starts in an early stage in human relations" as reflected during schooling in the deference that students in a lower grade show by bowing and expressing respect to students in a higher grade. In turn, Lee testified that "[t]he senior graders will show and demonstrate all kinds of considerations for the juniors and also help to assist and then provide complete and thorough trust." She further testified that this hierarchical system in Korean society was reflected in the relationship in Houston between Cho and her husband, which involved "respect, trust, and loyalty."

The following colloquy then occurred.

Q.  Okay.  Did you trust Mr. Cho?
A.  Yes, I did right before I came to this court.
Q.  So, when you say 'came to this court,' you mean before filing a lawsuit?
A.  That's correct.
Q.  And did your husband trust Mr. Cho at the beginning?
A.  Yes.

20

      *      *      *

Q. So, did you trust Mr. Cho?

A. Since my husband trusted him, I did the same.

Lee testified further that she invested money in the project "[b]ecause I trusted Mr. Cho."

We reject Kim's and Lee's contention that this testimony provides some evidence of circumstances giving rise to an informal fiduciary relationship existing before and apart from the transaction at issue in this litigation — and with it their suggestion that an informal fiduciary relationship necessarily exists among all persons of shared Korean heritage who understand the importance of "hierarchy in the Korean society." *See Schlumberger Tech. Corp.*, 959 S.W.2d at 176-77 ("But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. . . . We recognize that the Swansons testified that they trusted and relied on Schlumberger . . . .  However, mere subjective trust does not, as a matter of law, transform arm's length dealing into a fiduciary relationship.") (citing *Crim Truck & Tractor Co.*, 823 S.W.2d at 595); *see also Atrium Boutique v. Dallas Mkt. Ctr. Co.*, 696 S.W.2d 197, 199-200 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (trial court properly disregarded jury finding that appellant shared a confidential relationship with appellee based on testimony that parties' families were acquainted through school and "had a very friendly, respectful relationship with each other;" informal fiduciary duty did not arise based on testimony from appellant's co-owner that "I trusted them.  I respected them.  I had known the family for 20 years and I respected them and I felt like they were a family like our family, a close-knit family, good family, good people.").

We also note that, "particularly in the business arena, trust and reliance alone are not sufficient ingredients to create a fiduciary relationship." *Gregan v. Kelly*,

355 S.W.3d 223, 229 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594-95 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002)). "A person is justified in placing his confidence in the belief that another party will act in his best interest 'only where he is accustomed to being guided by the other party's judgment and advice and there exists a long association in a business relationship as well as a personal friendship.'" *Ferrara v. Nutt*, 555 S.W.3d 227, 243 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Areda v. S-W Transp., Inc.*, 365 S.W.3d 838, 841 (Tex. App.—Dallas 2012, no pet.)); *see Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Here, there is no evidence that a longstanding personal or business relationship existed between the parties, or that Kim and Lee were "accustomed to being guided by [Cho's] judgment and advice." *See Ferrara*, 555 S.W.3d at 243-44 (An informal fiduciary relationship did not exist, even though Ferrara had a longstanding personal relationship with Nutt and Dalu, when there was no evidence that Ferrara (1) had "'a long association in a business relationship' with them;" (2) was "'accustomed to being guided by [Nutt's and Dalu's] judgment and advice;'" and (3) "relied on Nutt and Dalu 'for moral, financial, or personal support or guidance.'"); *Lee*, 286 S.W.3d at 14 (An informal fiduciary relationship existed because evidence showed that "Hasson and Lee shared a long-standing business relationship and a close personal family relationship well beyond casual friendship and that Lee relied on Hasson for moral, financial, and personal guidance or support. Moreover, their relationship began in 1993 and therefore predated their agreements by approximately six years.").

**4. Conclusion: The record provides no basis for a fiduciary relationship**

Because there is no basis for a fiduciary duty on this record, we sustain Cho's first issue and conclude that the jury's answers to Questions 1 and 3 cannot support the trial court's judgment in favor of Kim and Lee.

**B. Fraud**

Cho contends in his second issue that the jury's fraud findings also cannot support the trial court's judgment. He argues the evidence is legally and factually insufficient to support the jury's finding that he committed fraud, and that Kim and Lee suffered damages caused by fraud.

We review legal sufficiency under the standard summarized above. *See City of Keller*, 168 S.W.3d at 810, 820. When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). Under both standards of review, the fact finder is the sole judge of the witnesses' testimony as well as the weight to be given to their testimony. *See City of Keller*, 168 S.W.3d at 819; *see also City Direct Motor Cars, Inc. v. Expo Motorcars, L.L.C.*, No. 14-13-00122-CV, 2014 WL 2553484, at *2 (Tex. App.—Houston [14th Dist.] June 5, 2014, pet. denied) (mem. op.).

Kim and Lee alleged fraud by misrepresentation and fraud by nondisclosure. Fraud by misrepresentation requires "'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs &*

23

*Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

"The elements of fraud by nondisclosure are (1) the defendant deliberately failed to disclose material facts to the plaintiff that the defendant had a duty to disclose, (2) the defendant knew the plaintiff was ignorant of the facts and that the plaintiff did not have an equal opportunity to discover them, (3) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, and (4) the plaintiff relied on the nondisclosure and suffered injury as a result of that reliance." *Adiuku v. Ikemenefuna*, No. 14-13-00722-CV, 2015 WL 778487, at *9 (Tex. App.—Houston [14th Dist.] Feb. 24, 2015, no pet.) (mem. op.); *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

We evaluate the sufficiency of the evidence in light of the instructions submitted to the jury. *Galvan v. Garcia*, No. 14-16-00162-CV, 2018 WL 3580574, at *5 (Tex. App.—Houston [14th Dist.] July 26, 2018, pet. filed) (mem. op.). Here, Question 7 instructed the jury on fraud as follows:

**Question 7**

Did Jang Won Cho commit fraud against Kun Sik Kim and Veronica Young Lee?

Fraud occurs when—

a. a party makes a material misrepresentation, and

b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

c. the misrepresentation is made with the intention that it should be acted on by the other party, and

d. the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means: A false statement of fact or a promise of future performance made with an intent, at the time the

24

promise was made, not to perform as promised.

Fraud also occurs when—

a. a party fails to disclose a material fact within the knowledge of that party, and

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

c. the party intends to induce the other party to take some action by failing to disclose the fact, and

d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No."

Answer: <u>Yes</u>

As submitted, there are two theories of fraud that can support the jury's "Yes" answer to Question 7. Therefore, we will examine whether the evidence supports the jury's finding under either a fraud by misrepresentation theory or fraud by nondisclosure theory.

### 1.       Fraud by nondisclosure

We begin by analyzing whether there is sufficient evidence to support a finding of fraud by nondisclosure.

The briefing does not identify any specific fraudulent nondisclosure attributed by Kim and Lee to Cho. As submitted in the jury charge, Kim and Lee had to prove that (1) Cho intended to induce them to "take some action by failing to disclose the fact[s]," and (2) they suffered injury "as a result of acting without knowledge of the undisclosed fact[s]." To the extent the contention is that Cho failed to disclose management fees incurred, interest paid to Apex Star Properties, Inc., attorney's fees paid, and undistributed profits, Kim and Lee acknowledge in their brief (and the record confirms) that they took no action related to management fees, interest, attorney's fees, and profits based on Cho's asserted failure to disclose facts

25

pertaining to these amounts.

Although a fraud by nondisclosure theory may include a claim that the defendant intended to induce inaction by the plaintiff, Question 7 required an ***action*** by Kim and Lee; Question 7 did not give the jury an avenue to find that Cho intended to induce Kim and Lee to ***refrain*** from acting because of a fraudulent nondisclosure. *See Adiuku*, 2015 WL 778487, at \*9; *Horizon Shipbuilding, Inc.*, 324 S.W.3d at 850; *see also* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 105.4 cmt. (2016). We review the sufficiency of the evidence based on the jury charge as given, which required an action. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard). It follows that Kim and Lee cannot recover based on asserted inaction induced by Cho's nondisclosure because inaction was omitted from the charge without objection.

Therefore, Kim and Lee cannot prevail on a fraud by nondisclosure theory and recover asserted damages for management fees, interest, attorney's fees, and profits.

### 2. Fraud by misrepresentation

We next consider whether the evidence supports the jury's fraud finding under a fraud by misrepresentation theory.

#### a. Management fees, interest, attorney's fees, and profits

Cho argues there is no evidence in the record that he made any representations to Kim or Lee about management fees incurred, interest paid to Apex Star Properties,

26

Inc., attorney's fees paid, and profits. We agree. Kim and Lee identify no such representations; instead, they portray these damage elements as part of a recovery for breach of fiduciary duty. As discussed above, there is no legally viable basis for the existence of a formal or informal fiduciary duty on this record. And in the absence of misrepresentations, Kim and Lee cannot prevail on a fraud by misrepresentation theory in connection with alleged damages relating to management fees, interest, attorney's fees, and profits.

**b.  Construction costs**

Cho asserts that Kim and Lee cannot establish fraud by misrepresentation with respect to construction costs because "Kim could not justifiably rely on" Cho's oral representation that the construction price for Pandel Plaza would be $47 per square foot when the express terms of the construction contract reflect the cost to be $69 per square foot. Cho asserts that Kim and Lee must establish *justifiable* reliance by Kim in order to recover for fraud.

We reject this contention because Question 7 as submitted did not require that reliance on a fraudulent misrepresentation be justifiable. Question 7's wording stands in contrast to Question 10, which required justifiable reliance in submitting the claim for negligent misrepresentation.

With respect to fraud as submitted in Question 7, "[N]o party, either by objection or requested question, definition, or instruction, complained of the charge's failure to require justifiable reliance." *Ghosh v. Grover*, 412 S.W.3d 749, 756 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Tex. First Nat'l Bank v. Ng*, 167 S.W.3d 842, 856 (Tex. App.—Houston [14th Dist.] 2005, judgm't vacated w.r.m.). Thus, in measuring the sufficiency of the evidence to support the jury's "Yes" answer to Question 7, we do not consider whether there is sufficient evidence of justifiable reliance. *Ghosh*, 412 S.W.3d at 756; *see also Osterberg*, 12

27

S.W.3d at 55. Question 7 required only reliance, and we examine the record in light of that less stringent requirement.

Cho relies heavily on the construction contract's $69-per-square-foot cost. Kim testified that Cho told him the construction price would be $47 per square foot, which Kim believed would be $423,000 for the 9,000-square-foot building.

Kim testified that Cho stated Pandel Plaza "would cost to other people $57 per square foot to build" but "on this particular project it would cost . . . $47 per square foot because this is partially my own building. So, the construction cost of $500,000 from the bank loan will do the job; and there will be some remainder." Kim also testified he talked to "friends and third parties" to verify that $47 was indeed a good construction price; Kim was told it was a good price because the market price at the time was $57 per square foot.

The January 17, 2004 construction contract signed by Kim and Mr. Lee specified a $629,630 construction price, which arguably indicates a price of approximately $69 per square foot. Kim testified as follows regarding the contract: "That's my signature, but I haven't ever seen this document before. . . . This is the first time I see this document. I have never seen and done [sic] my signature on it." Kim testified that he did not remember the construction price in the contract he signed but stated that he would not have signed a contract with a $629,630 construction price. Kim also testified that the $500,000 construction loan Pandel, Inc. obtained from the bank was "based on 47-dollar per square foot calculation; and, therefore, total sum of five — half a million dollars would be sufficient enough." Based on this record, there is legally and factually sufficient evidence of reliance on Cho's representation that the construction price for Pandel Plaza would be $47 per square foot.

Because there is legally and factually sufficient evidence of reliance on a

28

stated construction price of $47 per square foot, and Question 7 did not require that the reliance be justifiable, we reject Cho's contention that a lack of justifiable reliance means there is no "viable fraud claim based on the construction price."

### c.      Contribution and ownership

Cho contends the jury's fraud finding is not supported by legally and factually sufficient evidence because (1) Cho contributed at least an investment amount equal to Kim and Lee, so there is no evidence that he misrepresented to Kim and Lee that he would invest an equal share in the business; and (2) "[a]t all relevant times, the parties each have owned a one-third interest in the real property," so there is no evidence that Cho misrepresented to Kim and Lee they would each own one third of the business.

Cho's argument does not correspond to any of the damages awarded by the jury in Question 9 as a result of finding Cho liable for fraud in Question 7. The jury awarded Kim and Lee damages for "Construction Costs;" "Misapplication of initial investment;" "Management Fees;" "Interest paid to Apex Star Properties, Inc.;" "Attorney's fees for Mr. Cho's defense;" and "Undistributed profits." There is no evidence that any alleged misrepresentation relating to Cho's contribution or to Kim's and Lee's ownership in the business caused these damages submitted and awarded by the jury in Question 9.

### d.      Conclusion:  Sufficient evidence supports the jury's "Yes" answer to Question 7

The jury answered "Yes" to Question 7 in a single answer blank that encompasses both fraud by misrepresentation and fraud by nondisclosure. At a minimum, legally and factually sufficient evidence exists in this record to support a single "Yes" answer based on an affirmative misrepresentation and reliance in connection with the shopping center's construction cost. Therefore, we overrule

29

Cho's second issue insofar as he challenges the jury's affirmative finding that he committed fraud. Based on our disposition of Cho's second issue, Kim and Lee cannot recover damages for management fees, interest paid to Apex Star Properties, Inc., attorney's fees for Cho's defense, and undistributed profits awarded in Question 9 predicated on the jury's fraud finding in response to Question 7.

### 3. Damages for misrepresentation

Cho asserts the trial court's actual damages award (1) constitutes an impermissible double recovery; and (2) is not supported by legally and factually sufficient evidence. We address these arguments below.

### a. Double recovery

Predicated on the jury's affirmative answer to Question 7, Question 9 asked the jury to respond with a sum of money that "would fairly and reasonably compensate [Kim and Lee] for their damages, if any, that resulted from such fraud[.]" Question 9 listed six elements of damages, each followed by a blank for the jury's response. The jury responded with dollar amounts for each of the six elements, for a total of $1,128,283. The trial court's final judgment awarded this amount to Kim and Lee as actual damages.

As discussed above, four of the six damages elements submitted to the jury in Question 9 do not present viable bases for a fraud recovery on this record because there is no evidence of misrepresentations pertaining to these elements; these four are "Management Fees," "Interest paid to Apex Star Properties, Inc.," "Attorneys fees for Mr. Cho's defense," and "Undistributed profits." The two remaining damages elements submitted in Question 9 are "Misapplication of initial investment" and "Construction Costs." The jury answered "$352,600" for "Misapplication of initial investment" and "$129,630" for "Construction Costs."

30

Cho asserts as an initial matter that, by permitting Kim and Lee to recover damages for both "Misapplication of initial investment" and "Construction Costs," the trial court's final judgment impermissibly grants Kim and Lee a double recovery. Kim and Lee contend that Cho waived any error with respect to this contention. We reject their waiver argument.

To preserve error for appellate review, the complaining party must (1) make a timely objection to the trial court that "state[s] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context;" and (2) obtain a ruling. Tex. R. App. P. 33.1. Error generally is preserved when the complaining party "'made the trial court aware of the complaint, timely and plainly, and obtained a ruling.'" *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)). An objection must be clear enough to afford the trial court an opportunity to correct the alleged error. *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). We review objections "liberally so that the right to appeal is not lost unnecessarily." *Id*. at 388.

Although a party generally may pursue damages through alternative theories of recovery, "[a] party is not entitled to a double recovery." *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam). A double recovery exists when the plaintiff recovers twice for the same injury. *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012). An objection asserting that the plaintiff failed to elect its remedy preserves a double recovery complaint for appellate review. *See Waite Hill Servs., Inc.*, 959 S.W.2d at 184. This objection can be raised in a post-verdict motion. *See Yeng v. Zou*, 407 S.W.3d 485, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Solomon v.*

31

*Steitler*, 312 S.W.3d 46, 61 (Tex. App.—Texarkana 2010, no pet.).

The arguments raised in Cho's post-verdict motions preserve his double recovery argument for our review. In his new trial motion, Cho objected to the amounts the jury assessed for "Misapplication of initial investment" and "Construction Costs," asserting that the dollar amounts were "excessive." In his motion to modify, correct, or reform the final judgment, Cho challenged the final judgment's award of damages for "Misapplication of initial investment" and "Construction Costs," arguing that the damages award "violated the one-satisfaction rule." Cho requested that the final judgment be corrected to reflect that Kim and Lee were entitled only to a single recovery. These arguments preserve the double recovery challenge Cho advances on appeal. *See Arkoma Basin Expl. Co.*, 249 S.W.3d at 388; *Waite Hill Servs., Inc.*, 959 S.W.2d at 184; *Yeng*, 407 S.W.3d at 491; *Solomon*, 312 S.W.3d at 61.

Turning to the merits, we note that Texas recognizes two measures of direct damages for common law fraud: an out-of-pocket measure and a benefit-of-the-bargain measure. *Formosa Plastics Corp. USA*, 960 S.W.2d at 49; *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 374 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Out-of-pocket damages and benefit-of-the-bargain damages recovered for the same loss constitute an impermissible double recovery. *Yeng*, 407 S.W.3d at 491.

Here, Cho asserts that the "Misapplication of initial investment" element correlates with out-of-pocket damages and the "Construction Costs" element correlates with benefit-of-the-bargain damages. Because the final judgment's actual damages award incorporates both elements, Cho asserts that the judgment grants Kim and Lee an impermissible double recovery.

Kim and Lee do not join issue directly on the merits of Cho's contentions with

32

respect to damages based on their fraud claim. Instead, they contend that "this is *not* a case in which *one* act of wrongdoing gives rise to *one* cause of action and *one* injury for which damages is sought" (original emphasis). They contend as follows: "This is a case in which *multiple independent* acts of wrongdoing give rise to *multiple independent* injuries for which damages are sought" (original emphasis). They continue: "Mr. Cho breached his fiduciary duties not just once, but repeatedly — in a series of independent act of wrongdoing transactions that caused a [series] . . . of independent injuries." Kim's and Lee's contentions assume the existence of a viable breach of fiduciary duty claim; as discussed above, no such claim is viable on this record. The analysis here must focus on the application of existing standards governing damage awards based on a single fraudulent misrepresentation claim.

"The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received." *Formosa Plastics Corp. USA*, 960 S.W.2d at 49. Out-of-pocket damages measure the injured party's recovery based on the actual injury suffered and are designed to put the injured party in as good an economic position as it would have occupied had it not been entangled in the transaction involving the fraud. *Zorrilla*, 469 S.W.3d at 153; *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607-08 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Yeng*, 407 S.W.3d at 491.

In contrast, the benefit-of-the-bargain measure permits the injured party to recover profits or other value that would have been received had the bargain been performed as promised. *Zorrilla*, 469 S.W.3d at 153; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607-08; *see also Yeng*, 407 S.W.3d at 491.

Applying these legal precepts, the "Misapplication of initial investment"

33

element in Question 9 correlates with Kim's and Lee's out-of-pocket damages. *See Zorrilla*, 469 S.W.3d at 153; *Yeng*, 407 S.W.3d at 491; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607-08. Kim and Lee testified at trial that they each invested $176,300 in Cho's real estate project, for a total investment of $352,600. In response to Question 9's "Misappropriation of initial investment" element, the jury assessed $352,600 in damages. This measure of damages sought to restore Kim and Lee to the economic position they would have occupied had they not become involved in the failed real estate project with Cho. *See Zorrilla*, 469 S.W.3d at 153; *Yeng*, 407 S.W.3d at 491; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607-08.

We agree with Cho that Question 9's "Construction Costs" element correlates with Kim's and Lee's benefit-of-the-bargain damages. *See Zorrilla*, 469 S.W.3d at 153; *Yeng*, 407 S.W.3d at 491; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607-08. According to Kim's testimony at trial, Cho initially represented that construction of the commercial building would cost $47 per square foot, for a total cost of $423,000. Kim testified that Cho took out a $500,000 loan from the bank to fund the building's construction.

The January 1, 2004 construction contract specified a $629,630 construction price — $206,630 more than the Cho's $47-per-square-foot representation and $129,630 more than the $500,000 loan from the bank. The jury assessed $129,630 in damages in response to Question 9's "Construction Costs" element, which correlates with the amount the construction contract's price exceeded the $500,000 bank loan. By measuring Kim's and Lee's damages based on the value they would have received if Cho's construction cost representation had been accurate, the "Construction Costs" element of damages approximated Kim's and Lee's benefit-of-the-bargain damages. *See Zorrilla*, 469 S.W.3d at 153; *Yeng*, 407 S.W.3d at 491; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607-08.

The final judgment's actual damages award incorporated Question 9's "Misapplication of initial investment" and "Construction Costs" elements and therefore awarded both out-of-pocket and benefit-of-the-bargain damages. *See Zorrilla*, 469 S.W.3d at 153; *Yeng*, 407 S.W.3d at 491; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607-08. This award constitutes an impermissible double recovery. *See Weeks Marine, Inc.*, 371 S.W.3d at 162; *Waite Hill Servs., Inc.*, 959 S.W.2d at 184. Because Kim and Lee did not designate which of the two possible damage findings they wished to elect, the trial court should have rendered judgment on the jury's finding in response to the "Misappropriation of initial investment" element because it yielded the greater recovery. *See Yeng*, 407 S.W.3d at 491; *Hatfield*, 316 S.W.3d at 59. Therefore, we sustain Cho's third issue to reflect an election of an actual damage recovery of $352,600. *See Yeng*, 407 S.W.3d at 495.[2]

### b.  Legal and factual sufficiency

Cho also challenges the jury's findings in response to the individual damages elements submitted in Question 9. In light of our conclusion with respect to Cho's double recovery argument, we address only Cho's challenge to the jury's "Misapplication of initial investment" finding.

In its response to Question 9, the jury assessed $352,600 as the sum of money that would compensate Kim and Lee for the "misapplication of [their] initial investment." Cho asserts that this finding is not supported by legally or factually sufficient evidence because it fails to take into account the established market value of Pandel Plaza.

We review legal and factual sufficiency under the standards summarized

---

[2] In light of this disposition, we do not address Cho's contention that Kim and Lee lacked standing to recover damages for construction costs that, according to Cho, were paid by the Pandel entities rather than Kim and Lee individually.

35

above. *See City of Keller*, 168 S.W.3d at 810, 819, 820; *Cain*, 709 S.W.2d at 176; *see also City Direct Motor Cars, Inc.*, 2014 WL 2553484, at \*2.

Correlating to the jury's $352,600 finding, Kim testified that the parties each invested $176,300 in Cho's real estate project for a total investment of $352,600. Cho asserts that Kim and Lee "still own an interest" in Pandel Plaza and argues that the jury's $352,600 finding fails to account for the Plaza's "established market value."

Cho supports his argument with reference to the following: (1) a 2010 easement granted by Pandel, Inc. to the City of Houston; (2) a real estate appraisal completed prior to the granting of the easement; and (3) a 2016 agreement to sell Pandel Plaza to Michael Kanaan Development Inc. for $675,000.

The City of Houston paid $324,206 for the 2010 easement, which applied to a strip of land along the east side of Pandel Plaza. Before the easement was granted, Alan L. Dominy appraised Pandel Plaza and valued the property as of April 22, 2009. Dominy opined in his appraisal report that the entire Pandel Plaza parcel was worth $826,060 before the easement; after the easement, Dominy appraised the parcel's value at $501,854. In 2016, Pandel, Inc. agreed to sell Pandel Plaza to Michael Kanaan Development Inc. for $675,000. According to Kim's testimony, the transaction did not close and the sale ultimately fell through.

The record also contains significant evidence at the other end of the valuation spectrum and, as a whole, does not warrant disturbing jury's $352,600 finding.

Discussing Pandel Plaza, Kim acknowledged that the property was encumbered by a $70,000 tax lien, a $160,000 loan lien, and $55,000 in property taxes. Kim testified that the company holding the $160,000 note was looking to foreclose on the property. Kim testified that he did not "have any hope of recovering

36

[his] investment" in the property.

During her testimony, Lee also acknowledged the property's monetary encumbrances. Discussing the property's current condition, Lee testified that the building had "electricity problems;" that a water pipe had exploded; and that the "construction was done very poorly." Lee testified that a potential tenant interested in leasing commercial space at the property had to be turned away "because of the building problem." As a result of the 2010 easement granted to the City of Houston, a ramp was constructed in front of the property; the ramp interfered with access to the property and hid it from view.

With respect to the March 2016 sale of Pandel Plaza for $675,000, Lee testified that the sale "didn't go through" and that additional attempts to sell the property were unsuccessful. Lee testified that the investment in Pandel Plaza was worth "zero" and lost "completely."

Turning to Cho's legal sufficiency challenge, reasonable jurors could credit evidence favorable to the $352,600 finding. *See City of Keller*, 168 S.W.3d at 807. Kim and Lee testified that the initial investments in Pandel Plaza were lost; Kim and Lee acknowledged that the property was encumbered by significant financial debts. Lee testified with respect to the property's deteriorated state and the difficulty of locating tenants or a buyer for the property. This evidence supports the jury's $352,600 finding. *See id*.

Reasonable jurors also could disregard evidence contrary to the $352,600 finding. *See id*. The 2010 easement and Dominy's appraisal contain evidence of the property's value, but the easement and appraisal were several years old at the time of trial. The 2016 commercial sales contract purported to sell Pandel Plaza for $675,000, but the sale ultimately fell through. Lee testified that other attempts to sell the property were unsuccessful. Viewing this evidence in the light most

37

favorable to the challenged finding, it does not warrant disturbing the jury's $352,600 finding.

With respect to Cho's factual sufficiency challenge, the record contains evidence that both supports and counters the jury's $352,600 finding. But the $352,600 damages assessment is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust — some evidence supports the conclusion that Kim's and Lee's initial investment was completely lost, supporting the jury's $352,600 finding. *See Dow Chem. Co.*, 46 S.W.3d at 242.

We reject Cho's legal and factual sufficiency challenges to the jury's $352,600 finding and therefore overrule Cho's fourth issue.

### 4. Exemplary damages

Challenging the final judgment's exemplary damages award, Cho asserts that (1) the evidence is legally and factually insufficient to support an award of exemplary damages; and (2) the amount of exemplary damages is constitutionally excessive. We examine these arguments below.

### a. Legal and factual sufficiency

Exemplary damages may be awarded "only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon 2015). Incorporating this standard, Question 16 asked the jury:

> Do you find by clear and convincing evidence that the harm to [Kim and Lee] resulted from malice, fraud, or gross negligence?
>
> "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by [Cho] to cause substantial injury or harm to [Kim and Lee].

"Gross Negligence" means an act or omission by [Cho], which when viewed objectively from the standpoint of [Cho] at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which [Cho] has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*See id*. § 41.001(2), (7), (11) (Vernon Supp. 2018), § 41.003(a). Question 16 was predicated on a "No" answer to Question 1 or a "Yes" answer to Question 7. Question 16 did not define "fraud" independently of Question 7.

The jury unanimously answered "Yes" to Question 16. Challenging this finding, Cho asserts that "[t]here is legally and factually insufficient evidence of fraud, malice, or gross negligence."

With respect to an exemplary damages award, "we conduct a legal sufficiency review under the 'clear and convincing' evidence standard." *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 109 (Tex. App—Houston [14th Dist.] 2013, pet. denied). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2). We examine all evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Soon Phat, L.P.*, 396 S.W.3d at 109. We assume that the fact finder resolved any disputed facts in favor of its finding if a reasonable fact finder could have done so; we also disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.F.C.*, 96 S.W.3d 256, 265 (Tex. 2002); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 483 (Tex. App.—Fort Worth 2004, no pet.).

Our factual sufficiency review also incorporates the "clear and convincing" evidentiary standard. *See Citizens Nat'l Bank*, 142 S.W.3d at 483; *Foley v. Parlier*, 68 S.W.3d 870, 880 (Tex. App.—Fort Worth 2002, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). Our review of factual sufficiency of the evidence under a clear and convincing standard requires us to determine based on the record whether the fact finder reasonably could form a firm conviction or belief that the allegations were proven. *Citizens Nat'l Bank*, 142 S.W.3d at 483; *Foley*, 68 S.W.3d at 880.

As discussed above, the evidence in the record supports the jury's "Yes" answer in response to Question 7, which asked: "Did Jang Won Cho commit fraud against Kun Sik Kim and Veronica Young Lee?" Although analyzed in the context of Question 7's preponderance of the evidence standard, this evidence also is probative of the jury's "Yes" answer in response to Question 16 and supports the jury's finding that clear and convincing evidence shows "the harm to Kun Sik Kim and Veronica Young Lee resulted from . . . fraud[.]" *See Citizens Nat'l Bank*, 142 S.W.3d at 483 (evidence relevant to fraud claim "is also relevant to the exemplary damages finding" of fraud).

According to Kim's testimony at trial, Cho stated that Pandel Plaza "would cost to other people $57 per square foot to build" but "on this particular project it would cost . . . $47 per square foot because this is partially my own building. So, the construction cost of $500,000 from the bank loan will do the job; and there will be some remainder." Kim also testified that he verified the $47-per-square-foot cost by talking to "friends and third parties;" Kim was told that it was a good price because the market price at the time of construction was $57 per square foot.

The January 17, 2004 construction contract signed by Kim and Mr. Lee specified a $629,630 construction price, which indicates a price of approximately

40

$69 per square foot. With respect to the contract, Kim testified: "That's my signature, but I haven't ever seen this document before. . . . This is the first time I see this document. I have never seen and done [sic] my signature on it." Kim stated that he would not have signed a contract with a $629,630 construction price. Kim also testified that the $500,000 loan Pandel, Inc. received from the bank was "based on 47-dollar per square foot calculation; and, therefore, total sum of five — half a million dollars would be sufficient enough."

Cho contends that the fraud evidence cannot survive review under the clear and convincing evidentiary standard applicable to Question 16 because the fraud evidence cannot survive review under the lower preponderance of the evidence standard applicable to Question 7. Cho's attack on the fraud finding in response to Question 7 focused on his contention that insufficient evidence supports a "Yes" answer because there was no justifiable reliance with respect to representations regarding construction costs. We rejected that contention above because, in contrast to the negligent misrepresentation submission in Question 10, the fraud submission in Question 7 requires only reliance — not justifiable reliance. Question 16 is predicated on the "Yes" answer to Question 7 and does not define fraud independently of Question 7. Therefore, on this record, Cho cannot establish a basis for overturning the jury's finding in response to Question 16 on grounds that the jury's fraud finding in response to Question 7 should be overturned. We need not address whether the evidence contains sufficient evidence of "malice" or "gross negligence" as defined in Question 16.

Based on this record, a reasonable trier of fact could have formed a firm belief or conviction that "the harm to Kun Sik Kim and Veronica Young Lee resulted from . . . fraud[.]" The jury's "Yes" answer to Question 16 is supported by legally and factually sufficient evidence. *See Soon Phat, L.P.*, 396 S.W.3d at 109; *Citizens Nat'l*

*Bank*, 142 S.W.3d at 483.  We reject Cho's sixth issue.

## b.    Excessiveness

Highlighting that the jury awarded exemplary damages "in an amount exactly six times the amount of actual damages it found," Cho asserts that the exemplary damages award is "unconstitutionally excessive."  Kim and Lee contend that "Cho's conduct warrants very serious punitive damages."

"The constitutionality of exemplary damages is a legal question, which we review *de novo*."  *Barnhart v. Morales*, 459 S.W.3d 733, 751 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 307 (Tex. 2006)).  We review an award of exemplary damages for constitutional excessiveness by employing three guideposts.  *Bennett v. Reynolds*, 315 S.W.3d 867, 873 (Tex. 2010) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, 575, 580, 583 (1996)).  These guideposts are:  "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the exemplary damages awarded; and (3) the difference between the exemplary damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *Barnhart*, 459 S.W.3d at 751 (citing *Bennett*, 315 S.W.3d at 873); *see also Lundy v. Masson*, 260 S.W.3d 482, 497-98 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Degree of reprehensibility is the most important guidepost in this analysis. *Barnhart*, 459 S.W.3d at 752.  We consider five nonexclusive factors within this guidepost:  (1) whether the harm inflicted was physical rather than economic; (2) whether the tortious conduct showed an indifference to or a reckless disregard for the health and safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions; and (5) whether the harm resulted from intentional malice, trickery, or deceit, as opposed to mere

accident. *Id*. (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

"The second guidepost examines the ratio between the exemplary damages and the compensatory damages." *Id*. The Supreme Court of the United States has not drawn a bright-line ratio of exemplary to actual damages, but it has said that an exemplary damages "award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 418. "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id*. at 425; *see Tony Gullo Motors I, L.P.*, 212 S.W.3d at 308-09 (an exemplary damages award that exceeded four times the total compensatory award and was more than 17 times the plaintiff's economic damages "at least pushes against, if not exceeds, the constitutional limits"); *see also Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *12-14 (Tex. App.—Houston [1st Dist.] Feb. 16, 2007, no pet.) (mem. op.) (judgment's exemplary and actual damages yielded a 10:1 ratio; court suggested a remittitur of exemplary damages equal to five times actual damages).

The third guidepost requires us to examine the difference between the exemplary damages found by the jury and the civil and criminal penalties authorized or imposed in comparable cases. *Barnhart*, 459 S.W.3d at 752-53 (citing *Bennett*, 315 S.W.3d 881-82). We analyze comparable criminal penalties only in the context of seriousness of the action and not for determining the dollar amount of the award. *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 428.

Our analysis begins with the first guidepost and its five factors. *See Barnhart*, 459 S.W.3d at 751-52. The evidence does not support the first two factors: The harm inflicted by Cho (1) was economic rather than physical; and (2) did not show

43

an indifference or a reckless disregard for the health or safety of others.

With respect to the third factor, the record does not contain any evidence showing that the targets of the fraudulent conduct — Kim and Lee — were financially vulnerable. *See id*. The evidence suggests that Kim and Lee had some experience with financial transactions. Kim testified that, when Cho originally quoted a construction price of $47 per square foot, Kim tried "to verify if it was a good price" and "asked friends and third parties." Kim testified that he was told that "[f]orty-seven dollars [was] a relatively good price." Lee had experience in the real estate business. Mr. Lee was licensed as a CPA and operated his own office until its closure in 2007.

Evidence in the record also does not suggest that the harm was a repeated rather than isolated occurrence. *See id*. Kim's testimony does not indicate that Cho made more than one representation about the $47 per square foot construction cost.

For the fifth factor, evidence in the record supports the conclusion that the harm resulted from intentional trickery or deceit. *See id*. When presented with the January 17, 2004 construction contract at trial, Kim testified that he had never seen the document. Kim acknowledged that his signature was on the construction contract but testified that he did not sign the document. Kim testified that he would not have signed the construction contract if it included a $629,630 price. This evidence supports the conclusion that alleged harm resulted from Cho's intentional trickery or deceit. *See id*.

To sum up the first guidepost, the record contains evidence supporting one of the five reprehensibility factors. Our analysis with respect to the first guidepost therefore supports an award of exemplary damages. *See Bennett*, 315 S.W.3d at 877 (exemplary damages were warranted when only a single reprehensibility factor was present).

44

Turning to the second guidepost, the trial court's final judgment awarded Kim and Lee $1,128,283 in actual damages and $6,769,698 in exemplary damages. These awards yield a 6:1 ratio of exemplary to actual damages. Acknowledging applicable precedent, Kim and Lee state that this ratio is "a matter of concern" and "suggest a remittitur of the punitive damages award to an amount that equals three times actual damages."

With respect to the final judgment's actual damages award, we have sustained Cho's double recovery challenge so that Kim and Lee recover from Cho actual damages in the total amount of $352,600. We have rejected Cho's legal and factual sufficiency challenges to the jury's $352,600 finding. The $6,769,698 exemplary damages award, when compared to the modified $352,600 actual damages award, yields a 19:1 ratio. This ratio greatly exceeds the suggested ratio and indicates that the exemplary damages award exceeds constitutional limitations. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 418; *see also Huynh*, 2007 WL 495023, at *12-14.

For the final guidepost, we consider comparable criminal penalties. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 428; *Barnhart*, 459 S.W.3d at 752-53. We need not extensively examine this guidepost because "unconstitutional excessiveness is aptly demonstrated under the ratio guidepost above." *Bennett*, 315 S.W.3d at 880. Section 32.32 of the Texas Penal Code addresses the penalties for written misrepresentations. *See* Tex. Penal Code Ann. § 32.32 (Vernon 2016). Under section 32.32, obtaining property or credit by intentionally or knowingly making a false or misleading written statement is a third-degree felony if the value of the property or the amount of credit is more than $30,000 but less than $150,000 and is punishable by a fine of up to $10,000 and two to 10 years in prison. *Id.* at § 12.34 (Vernon 2011); § 32.32. The offense increases to a second-degree felony if the value of the property or the amount of credit is more than $150,000 but less than

$300,000 and is punishable by a fine of up to $10,000 and two to 20 years in prison. *Id*. at § 12.33 (Vernon 2011); § 32.32.

Considering our analyses with respect to all three guideposts, we sustain Cho's seventh issue and hold that the $6,769,698 exemplary damages award exceeds constitutional limitations. *See Gore*, 517 U.S. at 568, 575, 580, 583; *Bennett*, 315 S.W.3d at 873; *Barnhart*, 459 S.W.3d at 751-53. Because Cho's conduct involved intentional deceit and the comparable criminal penalties are serious, some award of exemplary damages is supported.

Sustaining Cho's seventh issue, we suggested a remittitur such that the exemplary damages award is reduced from $6,769,698 to $1,057,800; this lesser amount equals three times the modified actual damages award. *See* Tex. R. App. P. 46.3. Although there is no rigid benchmark for determining the reasonableness and proportionality of the award, precedent states that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 418; *see also Tony Gullo Motors I, L.P.*, 212 S.W.3d at 308-09. Our conclusion also took into account Kim's and Lee's suggestion of a remittitur of the exemplary damages award to an amount that equals three times actual damages. Kim and Lee timely accepted the suggested remittitur. We therefore modify the trial court's judgment to change the amount of exemplary damages to $1,057,800.

### 5.    Prejudgment Interest

Cho asserts in his eighth issue that the final judgment's prejudgment interest award uses the wrong accrual date and is excessive.

"A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." Tex. Fin. Code Ann. § 304.102 (Vernon 2016).

Prejudgment interest accrues as follows.

> [P]rejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered.

*Id*. at § 304.104 (Vernon 2016). "The awarding of prejudgment interest serves two purposes: (1) fully compensating plaintiffs for the lost use of money; and (2) encouraging both settlement and speedy trials." *I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 479 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Here, the trial court's final judgment awards $354,713.63 as prejudgment interest. Cho argues, and Kim and Lee acknowledge, that the trial court's prejudgment interest calculation assumes that Cho received the requisite notice on November 9, 2009, when Kim and Lee filed an original petition. The 2009 action was dismissed without prejudice pursuant to the parties' joint motion.

Cho asserts that the original petition filed in the 2009 action does not constitute "written notice of a claim" within the meaning of section 304.104. Cho argues that prejudgment interest should be calculated as of the date the underlying proceeding was filed.

Pointing out that their 2009 original petition "asserted the very same claims that [they] pleaded below and prevailed upon," Kim and Lee contend that the trial court correctly determined that Cho received written notice of the claim in November 2009.

We examined similar arguments in *I-10 Colony, Inc.*, 393 S.W.3d at 467, and *Texas Black Iron, Inc. v. Arawak Energy International Ltd.*, No. 14-17-00748-CV, 2018 WL 6378520 (Tex. App.—Houston [14th Dist.] Dec. 6, 2018, no pet. h.).

As part of an ongoing action, the trial court in *I-10 Colony, Inc.* authorized the

plaintiff to foreclose on certain property on September 3, 2009. 393 S.W.3d at 471, 479. The plaintiff foreclosed on the property and filed an amended petition on March 5, 2010, asserting a claim for an accounting; the plaintiff ultimately prevailed on and recovered damages for his accounting claim. *Id*. at 480. Determining that the defendant received notice of the accounting claim on the date of the foreclosure, the trial court awarded prejudgment interest that accrued from 180 days after September 3, 2009. *Id*. at 479. We reversed and held that March 5, 2010 was the proper beginning date for the accrual of prejudgment interest, stating that it would be inequitable to "start[] accrual of [prejudgment] interest on a particular claim before that claim was even raised." *Id*.

The plaintiff in *Texas Black Iron, Inc.* sued the defendant for claims arising from the purchase of three types of oil and gas drilling equipment. 2018 WL 6378520, at *2-3. The trial court signed a judgment for the plaintiff on its breach of contract claim. *Id*. at *4. For its prejudgment interest calculation, the trial court determined that the defendant received notice of the claim on March 11, 2016, when it received an email from the plaintiff complaining that one of the three types of equipment had not been delivered. *Id*. at *18-19. Reversing the trial court's calculation, we stated: "[E]ven assuming the March 11, 2016 email provided written notice to [the defendant] of that portion of [the plaintiff's] contract claim . . . , it would not support accrual of prejudgment interest on [the plaintiff's] entire contract claim." *Id*. at *19.

Here, we conclude that Kim's and Lee's 2009 original petition constituted "written notice of a claim" within the meaning of section 304.102. *See* Tex. Fin. Code Ann. § 304.102. The "Factual Background" of Kim's and Lee's original petition stated that (1) a loan was obtained to construct a commercial building; and (2) the parties invested capital for the construction of the building. Kim and Lee

alleged that Cho "secreted the facts and circumstances of the purchase, development, construction, leasing, and business dealings of the property from Kim and Lee." The 2009 original petition asserted a claim for common-law fraud, incorporating the petition's "Factual Background" section and asserting that Cho "made material representations to Kim and Lee that were false[.]" Unlike the "notices" we examined in *I-10 Colony, Inc.* and *Texas Black Iron, Inc.*, Kim's and Lee's 2009 original petition specifically asserted a fraud claim and alleged facts underlying the claim. *See I-10 Colony, Inc.*, 393 S.W.3d at 471, 479-80; *Tex. Black Iron, Inc.*, 2018 WL 6378520, at *2-4, *19. The 2009 original petition was sufficient to provide Cho with written notice of Kim's and Lee's fraud claim, which is the same claim at issue here. *See* Tex. Fin. Code Ann. § 304.102. This conclusion is not changed by a circumstance in which Kim and Lee dismissed their initial suit in August 2012 and promptly refiled it in February 2013.

We reject Cho's eighth issue insofar as he challenges the date on which prejudgment interest began accruing. We remand for recalculation of prejudgment interest in light of the modified damages award.

## II. Conduct of Trial

In his fifth issue, Cho contends that a new trial should be granted based on cumulative error because (1) the trial court impermissibly commented on the weight of the evidence by orally announcing a running tally of how many times Cho was admonished for providing non-responsive answers; and (2) translation problems arose during trial as questions posed in English were translated for the Korean-speaking witnesses, and these witnesses' answers in Korean were translated into English. We conclude that these asserted errors are not incurable and provide no basis for reversal because Cho did not raise objections on these grounds and seek relief in the trial court through an instruction or otherwise. *See Paul v. State*, No.

49

05-12-00551-CR, 2014 WL 1102014, at *5 (Tex. App.—Dallas Mar. 20, 2014, pet. ref'd) (mem. op.); *Veloz v. State*, No. 03-06-00499-CR, 2007 WL 2010802, at *8 (Tex. App.—Austin July 11, 2007, no pet.) (mem. op.); *Amerson v. Amerson*, No. 14-01-00625-CV, 2002 WL 1438672, at *2 (Tex. App.—Houston [14th Dist.] July 3, 2002, no pet.) (mem. op., not designated for publication); *see also* Tex. R. App. P. 33.1, 34.6(e).

We overrule Cho's fifth issue.

## CONCLUSION

We reverse the trial court's judgment as it relates to liability and damages for breach of fiduciary duty because as a matter of law no fiduciary duty exists on this record. We render a take-nothing judgment against Kim and Lee on their fiduciary duty claim. We affirm the trial court's judgment as it relates to liability for fraud. We reverse the trial court's judgment insofar as it awards fraud damages to Kim and Lee with respect to management fees, interest paid to Apex Star Properties, Inc., attorney's fees for Cho's defense, and undistributed profits. We render a take-nothing judgment with respect to fraud damages for management fees, interest paid to Apex Star Properties, Inc., attorney's fees for Cho's defense, and undistributed profits.

In light of Kim's and Lee's failure to elect between fraud damages for construction costs and fraud damages for misapplication of initial investment, the trial court should have rendered judgment awarding Kim and Lee recovery of actual damages only on the $352,600 award of fraud damages for misapplication of initial investment as found in response to Question 9(2) because that finding yields the greater recovery.

In light of this reduction in the amount of actual damages for fraud, the award

of exemplary damages as found by the jury is excessive.  We suggested a remittitur of the amount of exemplary damages from $6,769,698 to $1,057,800.  *See* Tex. R. Civ. P. 46.3.  Kim and Lee timely accepted the suggested remittitur.  We therefore modify the trial court's judgment to reduce the amount of exemplary damages to $1,057,800, and affirm the judgment as modified.  *See id*.

We reverse and remand to the trial court for recalculation of prejudgment interest in accordance with this opinion.

/s/    Meagan Hassan
Justice

Panel consists of Justices Wise, Hassan, and Poissant.